UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RICHARD THOMPSON, a Nevada resident; KEVIN BATTERSHELL, a California resident,<br><br>  Plaintiffs,<br><br>  v.<br><br>KEVIN LAKE, a Nevada resident; ERIC MARCONATO, a Nevada resident; ANTONIO MARCONATO, a Nevada resident; JAMES AHDUNKO, a Nevada resident; CHRIS ROWE, a Nevada resident; WESLEY KELLER, a Nevada resident; the CITY OF SPARKS, NEVADA,<br><br>  Defendants. | 03:11-CV-00644-LRH-WGC<br><br>ORDER |

This is a tort action. Before the court is defendants the City of Sparks and the above-named Sparks police officers' ("Sparks'") Motion for Summary Judgment (#13[1]). Plaintiffs Richard Thompson and Kevin Battershell have responded (#18), and Sparks has replied (#27).

**I.     Facts and Procedural History**

On September 8, 2009, Thompson and Battershell were driving on Highway 95A in Thompson's pickup from Silver Springs, Nevada to Reno, Nevada. (Battershell Aff. #19, ¶ 1.) They

---

[1] Refers to the court's docket number.

1 were towing three horses in a horse trailer because they were on their way to practice team roping, a
2 rodeo event. (*Id.*) While they were driving, several vehicles, including an unmarked van, merged
3 onto the highway from a dirt road several hundred yards in front of Thompson and Battershell.
4 (Thompson Aff. #20, ¶5. *See also* Sparks's Motion for Summary Judgment ("MSJ") #13, Ex. 1,
5 2:11-20; Ex. 2, p. 2:12-21; Ex. 3, p. 2:12-21; Ex. 4, p. 2:12-20; Ex. 5 p. 2:11-20; Ex. 6, p. 2:3-13.)
6 The van merged onto the highway immediately in front of Thompson and Battershell, causing
7 Thompson (the driver) to slam on his brakes and veer into the oncoming traffic lane. (Thompson
8 Aff. # 20 at ¶ 5.) Luckily, neither man nor horse were injured.

The merging vehicles contained six Sparks police officers and an ambulance medic who were returning from a day of Special Weapons and Tactics ("SWAT") Team training. (*See, e.g.*, Sparks's MSJ #13 at Ex. 1, p. 1:27-28.) The convoy from the SWAT training facility included a marked Sparks police car, a Sparks police "range truck," an unmarked Sparks police car, and the unmarked van. (*See, e.g.*, *id.* at Ex. 1, p. 2:14-20.) About ten miles after merging, the convoy stopped single-file at a red light. (*See, e.g. id.* at Ex. 1, p. 2:24-26.)

Thompson and Battershell pulled to a stop behind the van, the tail-end Charlie.[2] (Thompson Aff. #20 at ¶ 6.) Battershell got out of Thompson's pickup and approached the van's passenger-side door, hitting the door's window twice. (Battershell Aff. #19 at ¶ 8.) The van's driver, the ambulance medic, activated the van's siren (the van was actually a "tactical medic van," apparently a type of ambulance). (Sparks's MSJ #13 at Ex. 6, pp. 2:12-13; 4:7.) Battershell then returned to Thompson's truck. (Battershell Aff. #19 at ¶ 9.)

After the siren sounded, the convoy emptied six Sparks police officers onto the road. (*Id.* at ¶ 10.) The police officers were still wearing their SWAT training uniforms. (*See, e.g.*, Sparks's MSJ #13 at Ex. 1, p. 2:2-9.) The officers approached Thompson's pickup with guns drawn.

---

[2] "A person or thing that brings up the rear in a group or formation." TAIL-END CHARLIE, OxfordDictionaries.com, http://oxforddictionaries.com/definition/english/tail-end%2BCharlie (last visited Jan. 23, 2013).

(Battershell Aff. #19 at ¶ 10.) The officers told Thompson and Battershell to get out of the pickup with profanity-riddled instructions. (*Id*.) The parties dispute whether the officers verbally identified themselves as police officers. (*Compare id. with* Sparks's MSJ #13 at Ex. 1, p. 5:20-22.)

Battershell raised his hands, but he did not immediately exit Thompson's pickup. (*Id*. at ¶ 11.) Thompson rolled down his window because an officer was knocking on it with a pistol. (Thompson Aff. #20 at ¶ 7.) The officers then opened the passenger door and pulled Battershell out of the truck, handcuffing him. (Battershell Aff. #19 at ¶ 12.) Thompson stayed inside the truck at gunpoint before being ordered to pull over to the side of the road. (Thompson Aff. #20 at ¶¶ 8-9.) An officer from the Lyon County Sheriff's Office arrived about five minutes later. (See, e.g., Sparks's MSJ #13 at Ex. 1, p. 6:3-5.) At some point, Battershell requested that his handcuffs be loosened; an officer inspected the handcuffs, but he did not loosen them. (Battershell Aff. #19 at ¶ 13.) Forty minutes after the deputy sheriff arrived, Battershell was released from the handcuffs and cited for assaulting the van driver and for resisting arrest. (Sparks's MSJ #13 at Ex. 1, p. 6:3-5; Battershell Aff. #19 at ¶¶ 13, 15.) These charges were eventually dismissed. (*Id*. at ¶ 15.)

Thompson and Battershell have alleged that the Sparks' police officers violated their Fourth Amendment right to be free from unreasonable seizure. They have also lodged state-law claims for assault, battery, false imprisonment, and malicious prosecution. Finally, Thompson and Battershell claim that the City of Sparks is vicariously liable for its officers' alleged misdeeds. The Sparks defendants have moved for summary judgment on all of Thompson and Battershell's claims.

**II.    Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Community Hospital*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson School District No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.   Discussion**

    **A. Unreasonable Seizure under the Fourth Amendment**

Battershell and Thompson's section 1983 claim may be plausibly read as alleging a stop, an arrest, and a use of force all in violation of the Fourth Amendment. The court finds that the stop and arrest were supported by reasonable suspicion and probable cause, respectively. The court also finds that the officers are entitled to qualified immunity as to the excessive force claim.

//

4

### 1. Battershell Was Arrested and Thompson Was Lawfully Stopped

First, Sparks asserts that Battershell was the subject of a *Terry* stop, not a warrantless arrest. A *Terry* stop is a detention limited in duration, scope, and intensity, after which an innocent person would feel free to leave. *See, e.g, United States v. Sharpe*, 470 U.S. 675, 685 (1985). An arrest, in contrast, occurs when a reasonable person would believe that they are not free to leave. *See California v. Hodari D.*, 499 U.S. 621, 625 (1991). "Arrests and detentions are both 'seizures' under the Fourth Amendment, but only the former requires a showing of probable cause, while the latter can be justified by reasonable suspicion of criminal activity." *United States v. Charley*, 396 F.3d 1074, 1079 (9th Cir. 2005). The question is thus whether "in light of the totality of the circumstances" a reasonable innocent person in the same situation would have felt free to leave after brief questioning. *Id*. at 1080.

Sometimes, however, this is not the question that courts answer. In practice, the "reasonable innocent person" standard often takes a back seat to a different standard: whether the officer "diligently pursued" an investigation likely to confirm or dispel the suspicions bringing about the detention. *Sharpe*, 470 U.S. at 686. In *Gallegos v. City of Los Angeles*, 308 F.3d 987 (9th Cir. 2002), for example, the court found that a detention in which the suspect was ordered out of his car at gunpoint, handcuffed, transported to the scene of the crime, and held for about an hour was not an arrest. In reaching its decision, the *Gallegos* court focused on the investigatory purpose of the stop–"to make sure [the police] had the right person." *Id*. at 992. The court did not address what a reasonable innocent person would have felt when undergoing such a detention. *Id*. It is doubtful that "free to leave" would have been among such feelings.[3]

//

---

[3] *See also Charley*, 396 F.3d at 1081 (citing *Gallegos*); *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995) (holding that a suspect ordered out of his car at gunpoint and handcuffed was not arrested); *United States v. Taylor*, 716 F.2d 701, 709 (9th Cir. 1983) (holding that no arrest occurred where the defendant was stopped at gunpoint, ordered onto the ground, handcuffed, and frisked).

1  Here, under either the "reasonable innocent person" standard or the "diligent investigation"
2  standard, Battershell was arrested. A reasonable innocent person would not expect he was free to
3  leave after six officers in SWAT Team uniforms had ordered him out of the pickup at gunpoint,
4  pinned him to the ground, and handcuffed him. And whatever expectation of freedom might have
5  existed surely dwindled during the forty-five minutes Battershell remained handcuffed. (Battershell
6  Aff. #20 at ¶ 13.) Furthermore, the officers had resolved their suspicions regarding the threat
7  Battershell posed shortly after handcuffing Battershell and detaining Thompson. True, Battershell
8  did not exit the pickup on command and true, Battershell had pocket knives on him when he was
9  forcibly removed. (Sparks's MSJ #13 at Ex. 3, p. 5:9-15.) But shortly after Battershell had been
10 handcuffed and Thompson detained–certainly sooner than forty-five minutes–any threat stemming
11 from these two had been neutralized. Sparks has not pointed to any "articulable facts" justifying
12 further investigation. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968). Subsequent detention of Battershell
13 was therefore an arrest. *See, e.g.*, *Florida v. Royer*, 460 U.S. 491, 499 (1983) (holding that
14 detention beyond the scope of the reason for the *Terry* stop effectuates an arrest). *See also United*
15 *States v. Delgadillo-Velasquez*, 856 F.2d 1292, 1295 (9th Cir. 1988) (holding that conduct
16 "indistinguishable" from an arrest constitutes an arrest).

17 Thompson, however, experienced less intrusive restraints, and accordingly he was not
18 arrested. The Sparks officers directed Thompson to "stay in [his] truck and keep [his] hands
19 visible," directions with which he complied. (Thompson Aff. #20 at ¶ 9.) After the Lyon County
20 Deputy Sheriff briefly questioned Thompson, the Sparks officers gave Battershell's knives to him.
21 (*Id*. at ¶ 10; Sparks's MSJ #13 at Ex. 2, pp. 3-4.) The short period of Thompson's detention–when
22 he was ordered to stay in his pickup–was reasonably related in scope to both the investigation of
23 Battershell's conduct and the neutralization of any threat to officer safety. *See, e.g., United States v.*
24 *Wiga*, 662 F.2d 1325, 1332 (9th Cir. 1981) (holding that an officer may detain a suspect's associate
25 because the officer "cannot, on the spot, make the nice distinction between whether the other is a
26

1  companion in crime or a social acquaintance"). Furthermore, the return of weapons would put a
2  reasonable innocent person on notice that he was free to leave. Thompson was therefore not
3  arrested.

### 2. Battershell's Arrest Was Supported by Probable Cause

A warrantless arrest on a public street is proper if supported by probable cause. *See United States v. Watson*, 423 U.S. 411, 416-24 (1976). Probable cause exists "if, under the totality of the circumstances known to the officer, a prudent person would have concluded there was a fair probability that the defendant committed a crime." *United States v. Carranza*, 289 F.3d 634, 640 (9th Cir. 2002).

Here, at the time the Sparks officers arrested Battershell, they had probable cause to believe that Battershell had committed a criminal assault. As defined in Nevada, criminal assault involves "(1) [u]nlawfully attempting to use physical force against another person; or (2) [i]ntentionally placing another person in a reasonable apprehension of immediate bodily harm." Nev. Rev. Stat. § 200.471(1). The parties dispute whether Battershell attempted to enter the van. (*Compare* Sparks's MSJ #13 at Ex. 6, p. 3:25-27 *with* Battershell Aff. #19 at ¶ 8.) Undisputed, however, is that Battershell–a six-foot, two hundred fifty pound man (Sparks's MSJ #13 at Ex.10A)–was upset at being cut off by the van, (Sparks's MSJ #13 at Ex. 6, p. 3:22; Battershell Aff. #19 at ¶ 6), that Batttershell approached the van while the van was stopped at a stoplight, (Sparks's MSJ #13 at Ex. 1, pp. 2-3; Battershell Aff. #19 at ¶ 8), that Battershell hit the passenger-side window of the van twice with his hand, (Sparks's MSJ #13 at Ex. 6, p. 4:3; Battershell Aff. #19 at ¶ 8), that the medic was startled and sounded the siren, (Sparks's MSJ #13 at Ex. 6, p. 4:7; Battershell Aff. #19 at ¶ 9), and that Battershell retreated to Thompson's pickup afterward (Sparks's MSJ #13 at Ex. 1, p. 3:10-11; Battershell Aff. #19 at ¶ 9). At least one of the officers responding to the siren witnessed these events himself. (Sparks's MSJ #13 at Ex. 1, pp. 2-3.) A reasonably prudent person would have found a "fair probability" that Battershell had placed the medic in reasonable apprehension of immediate bodily harm. *See also Holland v. State*, 414 P.2d 590, 591 (Nev. 1966) *abrogated on*

7

*other grounds by Rosas v. State*, 147 P.3d 1101 (Nev. 2006) (observing that a suspect who fires shots into an empty car with the former driver nearby may be guilty of assault).[4]

### 3. The Officers are Protected by Qualified Immunity from the Excessive Force Claim

The remaining colorable section 1983 claim is one for excessive force. Excessive force claims are analyzed under the "objective reasonableness" standard of the Fourth Amendment. *Graham v. Conor*, 490 U.S. 386, 388 (1989); *see also Robinson v. Solano County*, 278 F.3d 1007, 1013-14 (9th Cir. 2002). The inquiry is a fact-intensive balancing of the government's interest and the degree of intrusion, a balancing in which the court evaluates "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Robinson*, 278 F.3d at 1014 (citing *Graham*). Because six factors are better than three, the Ninth Circuit also considers the total "quantum of force" involved, the availability of alternative methods of detaining the suspect, and the arrestee's mental and emotional state. *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010). Courts conduct their evaluation from the perspective of a reasonable officer on the scene, *id*., mindful that excessive force claims often present jury questions, *LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000).

Sparks has asserted a defense of qualified immunity. In a suit against an officer for an alleged violation of a constitutional right, the court must determine early on whether the officer is entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Qualified immunity is appropriate if the

---

[4] After Battershell refused to get out of the pickup, the officers might have had probable cause for the resisting offense under Nev. Rev. Stat. § 199.280 (prohibiting the willful resistance, delay or obstruction of a public officer in discharging his or her duties). Sparks points out that there is no Nevada caselaw addressing whether resisting is a general intent crime and thus whether section 199.280 requires that Battershell knew his captors were law enforcement officers. (Sparks's MSJ #13 at p. 14 n. 8.) Since the court has already determined there was probable cause for the assault arrest, the court need not reach this question.

facts, taken in the light most favorable to the plaintiff, show that the officer's conduct did not violate a clearly established constitutional right. *Id*. at 201. And a right is "clearly established" when a reasonable officer on the scene would have known that the alleged conduct was unlawful. *Id*. at 202.

Here, the officers' display of weapons, the removal of Battershell from the pickup, and Battershell's handcuffing did not violate clearly established law. First, the Ninth Circuit has recognized "a general principle that pointing a gun at the head of an apparently unarmed suspect during an investigation can be a violation of the Fourth Amendment, especially where the individual poses no particular danger." *Robinson*, 278 F.3d at 1015. But this "clearly established" principle articulates a standard for *Terry* stops involving a misdemeanor crime, an obviously unarmed and helpful suspect, and the absence of dangerous or exigent circumstances. *Id*. at 1014. Courts have frequently distinguished *Robinson* on the basis of arrests (versus investigative stops), felonies (versus misdemeanors), potentially armed suspects (versus obviously unarmed suspects), and the presence of dangerous circumstances (versus their absence). *See, e.g, Anderson v. City of Bainbridge Island*, 2010 WL 4723721 at *3 (W.D. Wash. Nov. 17, 2010) (distinguishing *Robinson* on the basis of all these factors); *Morgan v. City of Pleasant Hill*, 2005 WL 3454143 at *6 (N.D. Cal. Dec. 16, 2005) (same). Such distinctions are appropriate here, where Battershell was arrested on a felony charge, he and Thompson were potentially armed, and the felony took place in the middle of a highway at rush hour. Accordingly, *Robinson* does not establish a clear standard for the officers' conduct.

Nor did the removal of Battershell from the pickup stray into clearly prohibited territory under the Fourth Amendment. Battershell's removal fell well within the "quantum of force" that courts in this Circuit have found to be reasonable in similar circumstances. *See, e.g., Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1096 (9th Cir. 2006) (finding that a "control hold" prior to handcuffing was reasonable where the suspect ignored the officer's commands). Furthermore, Battershell's assault was a Class B felony, Battershell had retreated to the pickup

1 where (as far a reasonable officer on the scene would know) weapons might have been stashed, and Battershell did not immediately comply with the officer's commands. Thus, the *Graham* balancing would not put a reasonable officer on notice that Battershell's forcible removal from the pickup violated the Fourth Amendment.

Finally, Sparks is entitled to qualified immunity with respect to Battershell's overly tight handcuffing. Tight handcuffing alone may be excessive force. *LaLonde*, 204 F.3d at 960 (citing *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993)). *See also Meredith v. Erath*, 342 F.3d 1057, 1059 (9th Cir. 2003) (holding that a reasonable officer would know that overly tight handcuffing constitutes excessive force). However, "in those tight handcuffing cases in which courts have found excessive force, the arrestee was either in visible pain, complained of pain, alerted the officer to pre-existing injuries, sustained more severe injuries, was in handcuffs for a longer period of time, asked to have the handcuffs loosened or released, and/or alleged other forms of abusive conduct in conjunction with the tight handcuffing." *Shaw v. City of Redondo Beach*, 2005 WL 6117549 at *8 (C.D. Cal. Aug. 23, 2005) (collecting cases).

Here, Battershell alleges that his handcuffs remained too tight for forty-five minutes despite three requests to have them loosened. (Battershell Aff. #19 at ¶ 13.) After Battershell's first request, an officer examined the cuffs, squeezed them, and determined the cuffs were not too tight. (*Id.*) As a result of the cuffing, Battershell claims that he experienced numbness and nerve damage in his wrists.[5] Addressing the relevant right with sufficient particularity, *Saucier*, 533 U.S. at 202, the question for this court to resolve is the following: after an officer examines the tightness of

---

[5] Sparks argues that Battershell's hearsay testimony regarding the diagnosis of his physician cannot raise a genuine issue of material fact sufficient to withstand summary judgment. This is correct. *See Scosche Industries, Inc. v. Visor Gear Inc.*, 121 F.3d 675, 681 (9th Cir. 1997). It is also beside the point: an injury is not necessary to make out an excessive force claim. *See, e.g., Meredith v. Erath,* 342 F.3d 1057, 1063-64 (9th Cir. 2003). The same observations apply to Battershell's unauthenticated medical records. (And to the extent Sparks's asserts that a physical injury is necessary to an excessive force claim, this assertion is impermissibly based on a citation to a pre-2007 unpublished Ninth Circuit opinion. *See* Circuit Rule 36-3.)

10

handcuffs following a suspect's request to loosen them, is his determination that the handcuffs were not too tight protected by qualified immunity?

The court finds that it is. First, Battershell exhibited no objective signs of pain or suffering. *See Alexander v. County of Los Angeles*, 64 F.3d 1315, 1323 (9th Cir. 1995) (reversing a finding of qualified immunity when an officer noticed that the suspects wrists were "mushy or soft" after handcuffing). Second, Battershell was handcuffed following a lawful arrest. *See LaLonde*, 204 F.3d at 964 (noting that "[h]andcuffing an arrestee is standard practice, everywhere") (Trott, J., concurring in part and dissenting in part). Third, the officer responded to Battershell's request to loosen the cuffs by examining their tightness. The officer followed his training in checking for tightness by placing the tip of his forefinger between Battershell's wrists and the handcuff bracelets. (Sparks's MSJ #13 at Ex. 3, p. 5:1-13.) Indeed, the arresting officer (who is different from the handcuffing officer) "inspected [the handcuffs] for fit and double-locked [them] in order to prevent . . . over-tightening." (*Id.* at Ex. 1, p. 5:27-28.) After the officer examined the handcuffs, he "told [Battershell] they were not too tight" and did not loosen them. (Batttershell Aff. #19 at ¶ 13.) Battershell's subsequent requests to have his handcuffs loosened did not allude to pain. (*Id.*) The officer's conduct is therefore distinguishable from the unreasonable (in a qualified-immunity sense) conduct of officers who simply refuse to loosen cuffs following a request. *See Palmer*, 9 F.3d at 1435; *Alexander*, 64 F.3d at 1322-23; *LaLonde*, 204 F.3d at 952.

The post-examination determination that the handcuffs were not too tight warrants qualified immunity. The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quotation marks omitted). Here, the officer was neither incompetent nor a willful scofflaw: the officer attempted to ensure the cuffs were not too tight in consonance with prevailing law, and any error in his judgment on this score did not rise (or fall) to the level of incompetence. *See Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (noting that qualified immunity covers "mere mistakes in judgment") (Kennedy, J., dissenting). The officer was not

required to eliminate Battershell's discomfort. *See LaLonde*, 204 F.3d at 964 (noting that handcuffs are by their nature "uncomfortable and unpleasant") (Trott, J., concurring in part and dissenting in part). Rather, the officer's reasonable determination–in light of his training–of the line between too tight and tight enough is the type of discretionary act protected by qualified immunity. *See Hunter*, 502 U.S. at 229 (noting that qualified immunity is an "accommodation for reasonable error").

### B. Municipal Liability

Battershell and Thompson have not alleged that their constitutional injuries were proximately caused by a City of Sparks policy, custom, practice or procedure. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Nor have they provided any evidence to this effect. Therefore, the City of Sparks is entitled to summary judgment on Battershell and Thompson's sixth cause of action for "vicarious liability." *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (noting that there is no vicarious liability for a municipal "person" under section 1983).

### C. State Law Claims

Battershell and Thompson also allege assault, battery, false imprisonment, and malicious prosecution claims under Nevada state law. However, in light of the court's decision on Battershell and Thompson's federal claims, the court declines to exercise supplemental jurisdiction over their state claims. *See* 28 U.S.C. § 1367(c)(3). Exercising supplemental jurisdiction in this case would invite "needless decisions of state law." *Trustees of Construction Industry & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maintenance, Inc.*, 333 F.3d 923, 925 (9th Cir. 2003). *See also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

### D. Additional Time for Discovery

Finally, in their response, Battershell and Thompson have requested additional time for discovery. Such a request is not a properly made motion under Federal Rule of Procedure 56(d),

which allows for additional discovery.[6] *See Tatum*, 441 F.3d at 1100. For example, Battershell and Thompson have not shown "by affidavit or declaration" that there are specific facts further discovery would reveal. *Id*. Therefore, additional discovery is unwarranted.

**IV.    Conclusion**

Battershell succumbed to a fit of road rage, and the Sparks officers reacted. It is arguable that this reaction was an overreaction; it is not arguable that it was illegal.

IT IS THEREFORE ORDERED that Sparks' Motion for Summary Judgment is GRANTED in part and DENIED in part. Judgment in favor of Sparks and against Battershell and Thompson is hereby entered on Battershell and Thompson's federal claims.

IT IS FURTHER ORDERED that Battershell and Thompson's state law claims are DISMISSED without prejudice.

IT IS SO ORDERED.

DATED this 30th day of January, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[6] The parties refer to this as a motion under Rule 56(f).

13